Hunt, J.
the 22d of March, 1852, Charles T. Harrison was the owner of a life estate in No. 694 Houston Street, New York, as tenant in common with his brother Samuel. At the same time the defendant, was indebted to the said Charles in the sum of $500, for moneys received by him belonging to said Charles, from the surplus of the sale of No. 14 Charles Street, and for rents of said premises in Houston and Charles Streets, collected by defendant while assuming to act as agent for the said Charles T. The said Charles also had an- interest in certain trusts under his mother’s will, which, under some circumstances, might be of value. He was at this time a mariner, bad been such for seven years previously, was reckless, improvident, unacquainted with business as transacted on land, easily-led and persuaded to do foolish things, was needy and in want. At and before the time mentioned, the defendant stood in a . fiduciary relation-to said Charles, from having acted as his agent in collecting the rents and surplus interest, as above mentioned, and-had also been the agent of the executor of his mother’s estate, who was also trustee.of -personal property directed to be invested for the benefit of Charles T. and his brother Samuel.
On the day mentioned, the defendant, by unjust and inequitable means, obtained from the said Charles T. Harrison a conveyance of all the lands, tenements, claims, demands, bonds and money belonging to him as deviseé, legatee or appointee of his mother, or as one of her heirs-at-law, describing particularly certain interests and certain lands.
Charles T. Harrison was then ignorant of business, and of the value and situation of his property, unacquainted with the state of accounts between himself and the defendant, unable himself to investigate them, and had no counsel to advise or assist him. The. defendant knew all these facts, knew him to be reckless, improvident and dissipated, and did not disclose to him the state of his affairs, but concealed them, and' drew him into making the above conveyance, the consideration of which *76 was grossly inadequate; and the defendant’s conduct in obtaining the deed was inequitable and fraudulent. The actual value of the estate so conveyed was at least $2,300, and under some - contingencies, it would have been more valuable. The amount paid by the defendant to said Charles T. was abount $1,100, of which $700 was in money, $150 in a gold watch, and $250 was paid to the defendant’s counsel, for which the said Charles T. received no benefit whatever. At the time of the said conveyance Charles T. was indebted to the amount of $600, and his creditors are prejudiced by the conveyance aforesaid.
On the 3d of August, 1852, the said Charles T. Harrison ' made an assignment to the plaintiff for" the benefit of creditors of all his property and rights of action, with full power to sue for and collect the same.
On the 3d of September, 1852, the defendant, by further fraud and imposition, obtained from the said Charles T. a writing attempting to revoke the above assignment to the plaintiff.
The facts stated are as found by the referee in his report, and there is evidence to sustain them. They are not interfered with by the supreme court in the judgment given by it, and are obligatory upon us. We are not at liberty to weigh the evidence to determine whether we should have reached the same conclusion. (Code, § 272). ■ •
Upon the above facts the referee directed the setting aside of the conveyance to the defendant of March 22, 1852; and-that an accounting be had by said defendant of the moneys, rents and interests received by him; and judgment was entered upon his report in favor of the plaintiff, with costs.
The defendant appealed from this judgment to the General Term of the First District, where the judgment of the referee was reversed on the sole ground, as stated in the opinion, that the cause of action could not be transferred by Harrison, so that an action could be maintained upon it in the name of the plaintiff.
A transfer of property, real and personal, is obtained fraudulently and inequitably by false representations made by the transferee to. the transferrer, by. abuse of a fiduciary relationship, by practice upon a reckless and improvident sailor. The *77 transferrer makes a subsequent conveyance of all his property arid causes of action to the plaintiff, for the benefit of his creditors. Can the plaintiff maintain op. action in his own name against the first transferee to set aside the conveyance to him, as having been fraudulently and inequitably obtained, and by an abuse of a fiduciary relationship?
In the recent case of .Dickinson v. Burrell, this .precise question was presented. (See the “ Law Reports,” Equity series, 1866, Part III., March, page 337.) James Dickinson and others made a conveyance of their respective shares of the real estate of George Whiteboard, deceased, to John Edens, which was Hable to be set aside on the equitable grounds, viz.: that Edens was acting as sohcitor for Dickinson in relation to the White-beard estate; that the consideration was inadequate; that Dickinson was in indigent circumstances and ignorant of the value of property conveyed. Dickinson subsequently made a voluntary settlement- of the same property in trust for himself for Hfe, with remainder to his children as he should appoint, and in default of appointment to all his children who should attain twenty-one years "of age, or, being daughters, should marry, in equal shares. The bill was filed by five of Mr. Dickinson’s infant children, to set aside the conveyance to Edens as to them portion of the estate. The other three children, the trustees of the settlement, and Edens, were the dey fendants in the suit. Mr. Dickinson was not a party. Edens demurred to the. bill for want of equity. Mr. Sehvyn, Q. 0., Mr. Jessel, Q. C., and Mr. Hemmings, in support of the demurrer, claimed that the plaintiff could not institute the suit, arguing that at the time of making the voluntary settlement Mr. Dickinson had parted with all his interest hr the property for a valuable consideration, and that the settlements therefore convqved nothing but the right of suit to set aside the previous conveyance, which was contrary to public pohcy, on the ground of champerty, and not to be supported in equity. They further argued that if a bona fide conveyance would authorize the suit, it was otherwise with a voluntary settlement, which the settler could at any time avoid by a subsequent conveyance for value. Mr. Southgate, Q. C., and Mr. Webb, in support of the bill argued that there was no rule in equity prohibiting the sale of *78 property which the - assignor was entitled to recover by suit.; that the right of suit was incidental to the right of property, and did not affect the right to assign it. The demurrer was overruled with, costs.
Lord Romilly, M. R., deciding the case, said: “ Upon the allegations contained in the bill', I am of the opinion that a case is made out upon which, if prov.ed as there stated, this court would give relief at the instance of the proper persons. The only question, therefore, that I have to determine is, whether by reason of the deed of April, 1864, the plaintiffs have a right to ask for that relief when then father, the settlor, and the trustees of the settlement have refused or decline to concur in asking for such relief.” He proceeds—“ Assuming the deed of April, 1864, to have been executed for value, then the right of suing is incidental to the conveyance of' the property, and passed with it. That is, if. James Dickinson had thought fit, after the sale to Edens in 1860, to sell the same property to A B, saying that the previous sale was a fraudulent one, and , though he himself would not take any steps to set it aside, if A B thought fit to do so, he might, and that he would sell his interest in the property to A B for a sum of money then bona fide agreed upon, in such a case,'in my opinion A B could have maintained the suit. The distinction is this: if Dickinson had sold or conveyed the right to sue to set aside the indenture of December, 1860, without conveying his interest in the property which is the subject of that indenture that would not have enabled the grantee, A B, to maintain this bill, but if A B had bought the whole interest of James Dickinson in the property then-it would. The right' of suit is incidental to the property conveyed, -nor is it, in my opinion, a right which is only incidental to the property when conveyed as a whole, but is incidental to each interest carved out of it."
He then proceeds to consider the point that the conveyance was voluntary, and whether that fact alters or affects this right to sue, and says: “ I am of the opinion that it does not. * * ? Assrrming a voluntary deed to be com-1 píete, bona fide and valid, and unaffected by a statutory disability, I know of no distinction between such a deed and one executed for valuable consideration. 'The estates and limitations *79 created in such a deed have the same operation and effect as in a deed executed for value, and must be construed in the same manner, and it carries with it all the same incidents and rights attached to the property conveyed as are carried by a deed executed for value, and the granteein this respect stands in exactly the same situation as if he had paid value for the . property conveyed.
This was a well-considered case, is of high authority, and, in my opinion, is ah accurate exposition of the law. I think it should control the present case.
The Oneida Bank v. The Ontario Bank (21 N. Y. R., 490, 498; and, Tracy v. Talmage, 14 N. Y., 192), were cases similar . in principle to the present.. In the former ease the Ontario' Bank had issued certain post-dated drafts, which were held to bo within the prohibition of the statute against bills or notes not payable on demand. Assuming such drafts to be void, it was held that the party who received them upon a loan of money to the bank .was entitled to the money advanced by him, either upon the basis of a contract of loan, treating them as valid and rejecting the illegal security, or, upon a disaffirmance of the contract, as for money had. and received. ' It was further held that the discount of such drafts, by the Oneida Bank, for Perry the original lender, and the transfer of the same, by him, to the Oneida Bank the plaintiff,'gave to -such transferee the same rights of action against the Ontario Bank that Perry had. The Court say—“ He who sells a security and receives his pay for if, necessarily sells whatever claim or right the security is understood by the parties to represent.”
In Tracy v. Talmage the. Morris Canal and Banking Company had received certain post-notes which were held to bo void. The Moras Company transferred $196,000 of such notes to the State of Indiana. ■ The consideration for the post-notes was certain State stocks delivered to the Banking Association issuing the same, and the question, among others, was whether the State of Indiana was entitled to recover that consideration, the notes being considered void. There was no pretence that anything except the notes had been transferred in form, but it was held that the State was in equity the assignee of the de *80 mand which the notes professed to represent, and was entitled ' to recover the value of the stocks. (See 21 N. Y., .499).
In Waldron v. Willard (17 N. Y, 466), the firm of Bourn & Co. executed to the plaintiff a writing that “ we have this day sold to M. R. Waldron all our interest in the goods sunk by the boat ‘ Wyoming,’ ” with certain other particulars. It appeared that in the April preceding Bourn & Co. had shipped the goqds in question by the defendants’ boats on the Hudson river, that the boat was sunk, and after being fifty-five days under the water, it was raised, the goods on board were taken out, and sold for the benefit of the line. These facts were known to both parties to the bill of sale. It was held by this court that the above sale operated as a valid assignment of the rights of action against the Carrier- for the non-delivery of the goods.
The case of Prosser v. Edmonds (1 Young & C., 481, &c.), is cited as an authority in opposition to the doctrine. I have stated I do not understand the question at issue to have been involved in that case, or that it was intended to have been decided by Lord Abinger. He says that when a party assigns his whole estate, and afterward makes an assignment of the same estate generally to another person, and the second assignee claims to set aside the first assignment as fraudulent and void, the assignor making no complaint of fraud, the right of the second assignee to make such a claim would be a question deserving of great consideration. He expresses his present impressions as against the right, and illustrates his idea by suppositions which are at variance with the principles established in the cases in our courts. Lord Romilly says in • Dickinson v. Burrell, supra, “ that the case before us does not fall within the rule established by that decision of Prosser v. Edmonds. Nor is this case in principle like that of Nicoll v. The New York and Erie Railroad Company (2 Kern., 121). The decision there was that when land was conveyed with a condition subsequent a mere failure to perform the condition does not divest the title, but there must be an entry, or what is equivalent by statute, by the grantee or his heirs, and that this right of entry did not pass by a conveyance of the land. This was the express ground that the conditions subsequent were *81 reserved for the benefit of the grantor and Ms heirs solely, and that no other person could take advantage of the breach. Of a similar character are the usury cases sometimes cited, which hold that the defence is a personal one, and that none but the borrower techmcally, or his personal representatives, can set up the defence.
Tn regard to the effect of an adverse holding by the defendant at the time of the execution of the assignment, the case of Dickinson v. Burrell, as well as that of Livingston v. The Peru Iron Company (9 Wend., 511), shows that such defence is not available where the holding is under a deed fraudulently obtained. In the latter case it appeared that Livingston made a voluntary conveyance to Ms sons of a large tract of land in CMrton county. The sons filed a bill against the defendants alleging that their purchase was obtained by fraudulent misrepresentations as to the character and value of the land. The defendants demurred on the ground that they were in possession of the land at the time of his conveyance by Livingston to Ms sons by virtue of the deed under which they claimed. The court of errors held against the demurrer, deciding that possession under a deed fraudulently obtained could not be deemed adverse, so as to avoid the deed of the plaintiff.
The court below, in my opinion, were in error in holding that tire assignment to the plaintiff did not authorize the suit brought by him in his own name.
The evidence of abuse of the "confidence arising'from o. fiduciary relation brought the case within the principle of Tate v. Williamson (1 Law Reports, Equity Series, p.. 528), which was shortly this: “ a nephew of a former trustee of B’s property being commissioned by his uncle to advise B, a young man aged 23, of intemperate and extravagant habits,-in the settlement of his college debts, which amounted to £1,000, and to advance him £500 for the purpose, offered to give him £7,000= for Ms undivided moiety of an estate under which there were coal mines, the working of which had been discontinued for fifteen years. Pending the negotiation, A obtained from 0, a -mining engineer, an estimate putting the value of the mine-, rals under the entire estate at £22,000. A separate solicitor was employed for B at A’s suggestion, and before completing *82 the bargain A urged B to consult his father, (with whom he was not upon good terms). A did not communicate to B the valuation of the engineer, nor did he suggest to him to consult a mineral engineer. B accepted A’s offer of ¿67,000, and died • shortly after executing the conveyance. On bill by B’s administrator to set.aside the purchase, Held that such a fiduciary relation existed, that the suppression from B of the engineer’s valuation rendered it impossible for the courts to sustain A’s ■ purchase. Sir A. Page, V.-C., says: “ the .broad principle on which the court acts in cases of this description is that whenever there exists such a confidence, of whatever character that confidence may be, as enables the person in whom confidence or trust is reposed to exert influence over- the person trusting him, the court will not allow any transaction between the parrties to stand unless there has been the fullest and fairest-exlilanation- of every particular resting in the breast of the one who seeks to establish a contract with the person so trusting him. * * ' * The young man having then said that he was-determined to dispose of Ms property,.it was absolutely impossible for Robert Williamson, filling, as he did, that position of confidential adviser, to enter into any treaty for the purchase of that estate, without commumcating to him every-particle of information that he himself possessed with respect to its value.”
The judgment of the general term should be reversed, and that of the referee affirmed with costs.
Judgment reversed.